| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br><br>**BECKER MEISEL LLC**<br>Eisenhower Plaza II<br>354 Eisenhower Parkway, Suite 1500<br>Livingston, New Jersey 07039<br>Phone: (973) 422-1100<br>Facsimile: (973) 422-9122<br>ajunderwood@beckermeisel.com<br><br>240 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Phone: (212) 390-8407<br>Facsimile: (646) 619-4699<br><br>Attorneys for Victory State Bank<br>ALLEN J. UNDERWOOD II | Hearing Date &Time:June 4, 2014 at 3:30 pm<br>Opposition Deadline: at hearing |
| In re:<br><br>DiNaso & Sons Building Supplies Company, Inc.<br>(proper name, DiNaso & Sons Building Supply<br>Company, Inc.)<br>　　　　　Debtor and Debtor-in-Possession | Case No. 14-42298 (CEC)<br><br>Chapter 11<br><br>Judge: Hon. Carla E. Craig |

**VICTORY STATE BANK LIMITED OPPOSITION TO: 1) DEBTOR'S MOTION FOR ENTRY OF ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING (A) AGREEMENT OF SALE WITH STALKING HORSE BIDDER, (B) BID AND SALE PROCEDURES, (c) MANNER AND FORM OF NOTICE, AND (D) AUCTION DATE IN CONNECTION WITH SALE OF DEBTOR'S REAL PROPERTY; AND 2) DEBTOR'S APPLICATION TO EMPLOY KEY AGENCY AS REAL ESTATE BROKER**

TO THE HON. CARLA E. CRAIG, U.S.B.J.

　　　　Secured Creditor Victory State Bank (the "VSB"), a licensed bank and lender of the State of New York, with offices located at 4142 Hylan Blvd., Staten Island, New York, 10308, by and through its counsel, Becker Meisel LLC, hereby submits this *Limited Opposition to the Debtor's Motion for Entry of Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving*

*(A) Agreement of Sale with Stalking Horse Bidder, (B) Bid and Sale Procedures, (c) Manner and form of Notice, and (D) Auction Date in Connection with Sale of Debtor's real Property* (the "Motion") and in Limited Opposition to *2) Debtor's Application to Employ Key Agency as Real Estate Broker* (the "Broker Retention") and respectfully represents as follows:

## BANKRUPTCY BACKGROUND

1.      On or about March 19, 2014 John DiNaso & Sons, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.  As of last week, and Order had been entered in said case converting it to a case under Chapter 7, and Gregory Messer, Esq. has been appointed Trustee.  In that matter, VSB has pending and returnable on June 4, 2014 a Motion for Relief from the Automatic Stay, and Related Relief.  VSB loaned said Debtor funds pre-petition, and VSB's security and collateral includes but is not limited to accounts, receivables and inventory under a note with security agreement and filed UCC's, and a subsequent New York judgment.

2.      After John DiNaso & Sons, Inc. filed its Chapter 11 Petition with this Court, on May 7, 2014, Dinaso & Sons Building Supplies Company, Inc. filed a Chapter 11 Petition with this Court.  Despite the caption, VSB believes that the correct and proper corporate name for the entity is "DiNaso & Sons Building Supplies Company, Inc." ("Debtor").  Debtor is an affiliated entity of John DiNaso & Sons, Inc.

3.      Debtor, based upon its Petition has assets by way of commercial real property located at 133 Ocean Avenue in Lakewood, NJ, certain personalty thereon, and receivables.[1]

4.      The Debtor remains a Chapter 11 Debtor-in-Possession managing its affairs, with

---

[1] VSB's collateral and loan history is fully and accurately set forth in its Stay Relief Motion pending in the John DiNaso, Sons, Inc. Chapter 7 matter.

no Trustee, and no Committee, being appointed to date.

5.    VSB's security or collateral in the Debtor's assets, as they are presently understood, though without limitation, includes but is not limited to a New York judgment which has been domesticated in New Jersey.[2] This Judgment has a present estimated value of less than $300,000.00. DiNaso entities total indebtedness to VSB exceeds $500,000.00.

6.    Upon information and belief, Santander Bank's mortgage security in the Debtor's Lakewood, New Jersey real property is significantly less than the proposed sale price, as well as significantly less than the total amount owed Santander by all DiNaso entities in the aggregate.

7.    It is unclear whether the proposed sale price as to the Lakewood, New Jersey Property is sufficient to satisfy all mortgages, liens and encumbrances.

8.    The Debtor's Chapter 11 Petition, as with the John Dinaso & Sons, Inc. Petition prior, was filed by the law firm of Rash & Bakshi. In over two months following the filing of the John DiNaso & Sons, Inc., Petition, prior to conversion, Rash & Bakshi never filed an application for retention as Debtors counsel. Likewise, in the one month since the filing of Debtor's Petition, the law firm of Rash & Bakshi has not filed any application with this Court for approval of its retention as attorneys for the Debtor.

9.    Notwithstanding the abject failure to file requisite retention pleadings, counsel has filed Section 363 sale motion papers alleging to sell substantially all of Debtor's assets, and an application to retain a broker regarding same. VSB on a limited basis objects to both of these applications.

10.    The within Limited Objection is as simplified and brief as possible, insofar as the timing of Debtor's applications has left VSB and this Court with little time to review and

---

[2] VSB's collateral and loan history is fully and accurately set forth in its Stay Relief Motion pending in the John DiNaso, Sons, Inc. Chapter 7 matter.

appraise serious issues, and VSB's intent is to highlight major concerns. VSB will more fully brief same, if necessary, required or if time permits.

## 1) LIMITED OBJECTION TO SECTION 363 SALE MOTION

9. Debtor's *Section* 363 Sale Motion fails to provide the following information requisite for creditors to evaluate the Motion, and requisite for this Court to determine whether or not to grant same:

    a) an appraisal as to the value of the real property to be sold – one of Debtor's principals appears to certify in an unlinked pleading that the real property is worth $2.4 million, but the basis for this statement is not given;

    b) an appraisal and/or certification as to the value of the fixtures located at the real property;

    c) an adequate description of the real property (upon information and belief at one time that Debtor may also have owned another contiguous lot – is that still the case?);

    d) an adequate description, inventory and valuation of the personal property located at the real property, which may include inventory and appears to include equipment;

    e) a schedule or certification as to mortgages and liens outstanding as to the real property; and

    f) a schedule or certification as to security interests in personal property to be sold;

    g) a certification as to marketing efforts or other interested parties as to the property;

    h) a certification or evidence as to whether the property is insured for casualty, fire, injury and the like (a critical issue if the "auction" is to be conducted at the property).

10. With reference to the proposed purchaser or "stalking horse bidder", there is no disclosure or certification that the proposed purchaser is not an insider of the Debtor, no disclosure that proposed purchaser has the means to effectuate a "cash deal" as proposed, and no

disclosure as to whether the proposed purchaser or the Debtor has performed any due diligence as to the property, and the sale of the property, and whether that due diligence will be available to other bidders.  There is no disclosure as to whether any other parties have expressed interest in the property.  There is no disclosure as to how long, how, and to whom the property has been marketed.

11.     Most disturbingly, Debtor's application states that post-petition, on May 15, 2014, "The Debtor and the Stalking Horse Bidder, Marcel Katz, entered into to the Agreement for the Sale of the Real Property. . . for the Purchase Price of $2,400,000.00." (Debtor's Motion at Page 3 - indicating that a Copy of the Agreement is attached at Exhibit "A.")  However, the Agreement attached at Exhibit "A" is not signed, dated or executed, there is no certification or affidavit from the proposed purchaser, and there is no disclosure as to whether a deposit in any form has already been paid by the purchaser or accepted by the Debtor-in-Possession.

12.     With reference to the "Stalking Horse" procedures, the Debtor's Motion establishes a very tight time schedule, one which will almost certainly **not** encourage vigorous bidding or higher and better offers.[3]  Should the court adhere to the Debtor's schedule, prospective bidders will likely have less than 11 days to take all steps necessary to file a competing bid:

    b)     required bid documents would be due June 15, 2014;

    c)     a "sale procedures" hearing is referenced in at least one location as being returnable on June 16, 2014 (making it physically impossible to submit a bid under an entered sale procedures order);

---

[3] Counsel for VSB received by mail today, June 3, 2014, Debtor's Notice of Proposed Sales Procedures, the Short Notice Motion and related documents.

  d) an "auction," at the New Jersey property location, would occur on June 16, 2014 at 4:00 pm (as stated in the Debtors "Notice of Proposed Sale," or June 17, 2014 at 11:00 am, as stated in the Debtor's original proposed Bid Procedures (which is it?);

  e) a sale confirmation hearing would occur in this court at 10:00 am the next day, June 17, 2014;

  f) topping bids are set at $100,000.00 increments – on a $2.4 million dollar sale, this may be to high to encourage vigorous bidding;

  g) Debtor has not filed an application to retain an Auctioneer, both to market the property in the period prior to the "auction" sale at the property, and to actually conduct the "auction sale" at the property. It is left a mystery as to what Debtors will do, if, for instance, three qualified bidders actually appear at the property on June 16.

13. If in fact the sale is of substantially all of Debtor's assets, it is arguable that the *Section* 363 Sale Motion constitutes a *defacto* Plan of Liquidation, without all of the protections to which all creditors would be entitled under the Plan Confirmation process.

14. In short, the entire sale process as described by the Debtor's Sale Motion and related Pleadings seems calculated either to fail, confuse and discourage bidding, or be subject to appeal.

**2) Limited Objection to Retention of Key Agency as Real Estate Broker to the Debtor**

14. The Application and Affidavit of Disinterestedness of Ronald Raimondo as to the proposed Retention of Key Agency only address disinterestedness issues (and at that not wholly). To wit, in addition to no proposed contract being attached (although the Application states that a proposed agreement is attached at Exhibit "A," there is no Exhibit "A' actually attached), there is no disclosure as to whether brokerage services were performed for the Debtor pre-petition, or any payments made to the broker pre-petition, or whether the broker was party to a pre-petition contract.

15. Mr. Raimondo does disclose that one Michael Sorrentino, who is also an "agent with Key," is the son of Barry Sorrentino who "currently acts as a consultant to the Debtor." Which begs the question, a consultant as to what, and under what terms?[4] Debtor's counsel has made the representation, repeatedly, that Debtor is non-operating.

16. Aside from the above issues, which may be fatal to the application in their own right, there is absolutely no indication in the Application as to why a broker is needed, why this Broker should be entitled to any fee, and no indication as to what Key will do to earn a fee. There is no suggestion that Key is actively marketing the property, has or marketed advertised the property, or will advertise and market the property and the proposed auction sale. A search of the address on the internet did not, upon information and belief, reveal that the property is currently listed for sale.

17. It would appear that the Debtor does not need a broker – what it clearly needs is an Auctioneer – and an application for same has not been filed.

**3) Conclusion**

18. There is no question that there are circumstances in bankruptcy proceedings when procedures on limited notice and shortened time are warranted, presuming that a Debtor is in compliance with all aspects of the Code, Rules and Local Rules, and subject to Bankruptcy Court Order. The Motion, proposed Sale, and Sale and Notice Procedures proposed here, and the Broker Retention proposed here, simply do not set forth adequate grounds at present for this Court to enter an Order approving either. VSB reserves all rights as to the pending matters, and it may ultimately be that the Sale as proposed, a proper and well advertised auction sale, and/or

---

[4] In deference to Mr. Sorrentino, it appears that he may be a turn-around professional, which would seem to be precisely what this Debtor needs, though he certainly should be properly retained by Order of this Court.

the Retention are in fact in the best interests of the Debtor – it is simply not possible for this Court or any creditor to make that determination on the evidence presently before them.

**WHEREFORE**, VSB respectfully requests that Relief sought on the Motion and Retention Application be denied, or carried so that Debtor may augment its pleadings and the record.

        **BECKER MEISEL LLC**
        Attorneys for Creditor
        Victory State Bank

        Eisenhower Plaza II
        354 Eisenhower Parkway, Suite 1500
        Livingston, New Jersey 07039
        Phone: (973) 422-1100
        Facsimile: (973) 422-9122
        ajunderwood@beckermeisel.com

        240 Madison Avenue, 7th Floor
        New York, New York 10016
        Phone: (212)390-8407
        Facsimile: (646)619-4699

        By:   /s/ Allen J. Underwood II
                ALLEN J. UNDERWOOD II

Dated:   June 3, 2014
Livingston, New Jersey

S:\Docs\Becker Meisel\VICTORY STATE BANK - JOHN DINASO & SONS INC\CASE NO. 14-42298 - FILED 5-7-14\Pleadings\DiNaso & Sons Building Supplies Company, Inc. - Opposition to Sale Motion.doc