UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                                                   Chapter 7

DINASO & SONS BUIDLING SUPPLY CO., INC.,         Case No. 14-42298 (CEC)

                                              Debtor,
------------------------------------------------------------------x

## DECLARATION RELATING TO APPLICATION OF
## KEY AGENCY INC. FOR BROKERAGE COMMISSIONS

Mark Tress declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1. I am a real estate developer, and a principal of Hampton Development ("Hampton").

2. Hampton was the successful bidder for the purchase of real estate located at 133 Ocean Avenue, Lakewood, New Jersey (the "Property"), which was offered for sale at an auction conducted by Gregory Messer, Trustee of DiNaso & Sons Building Supply Co., Inc., the Debtor herein.

3. Kevin Nash, a partner at the law firm of Goldberg Weprin Finkel Goldstein LLP, has acted as my attorney in a number of matters for several years. I received a call from Mr. Nash, who informed that he had met Fred B. Ringel, Esq., of the law firm of Robinson Brog Leiwand Greene Genovese & Gluck P.C., counsel for the Trustee, in court one day, and that Mr. Ringel had mentioned in conversation that he was working on the sale of real property located in Lakewood, New Jersey. Mr. Nash related the conversation to me because I own other real property in Lakewood and he thought I might be interested in the sale. On the basis of this conversation, I performed due diligence and decided to make an offer to purchase the Property, through my company, Hampton.

1

4. By this time, the Trustee had entered into a "stalking horse contract" with a prospective purchaser, and had obtained an Order of this Court scheduling an auction and approving bidding procedures. Among the approved procedures was that any qualified bidder was required to execute a contract substantially similar to that of the stalking horse contract. I did so, but when the offering contract containing Hampton's competing bid was prepared, the provision relating to the use of the Key Agency Inc. ("Key") as broker, which had been in the original stalking horse contract, was inadvertently retained.

5. In fact, I never communicated in any way with Key or any of its employees, and indeed have never heard of either Key, or its apparent principal, Ronald Raimondo, whom I am advised executed an application on behalf of Key for allowance of brokerage for services alleged to have been rendered in connection with the sale. Neither Hampton nor I have any relationship, business or personal with Key or Raimondo. Key did not introduce us to the property and played no role in our decision to review the opportunity to acquire the property and make a bid for it. Simply put, no broker participated in any way in Hampton's purchase of the Property.

6. Accordingly, it is respectfully submitted that any reference to Key in the sale contract ultimately executed by Hampton and the Trustee is nothing more than a scrivener's error, and should not be deemed a basis for allowance of the brokerage commission claimed by Key.

7. I am advised that there was also a reference in Key Agency's fee application that Hampton was an "anonymous telephone" bidder at the auction. In fact Hampton was represented at the auction by its counsel, Goldberg Weprin Finkel Goldstein LLP, who made the bids on behalf of Hampton. During the auction I consulted with my counsel telephonically

regarding the course of the bidding, but Hampton was not an "anonymous bidder" and I was informed that the Trustee's counsel advised the stalking horse bidder's counsel of Hampton's timely competing bid and identity when such "qualifying bid" was made by Hampton.

Dated: Lakewood, NJ
       March 2, 2015

                                                                                       Mark Tress